IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED IN OPEN COURT
MAR 24 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:11-CR-155 |
| v. | ) |
| | ) Count 1: 18 U.S.C. § 1349 |
| JAVIER SIVERONI, | ) (conspiracy to commit wire and mail fraud) |
| | ) |
| Defendant. | ) Counts 2 - 5: 18 U.S.C. § 1343 |
| | ) (wire fraud) |
| | ) |
| | ) Forfeiture Notice |

## INDICTMENT

March 2011 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

At all times material to this Indictment:

### INTRODUCTORY ALLEGATIONS

**I.   Relevant Persons and Entities**

1.   SunTrust Mortgage, Inc. ("SunTrust") is a mortgage lending business headquartered in Richmond, Virginia and that operated offices in the Eastern District of Virginia.

2.   Defendant JAVIER SIVERONI ("SIVERONI") was a loan officer who worked in the Falls Church, Virginia branch office of SunTrust from 1997 to 2011. SIVERONI earned commissions for each loan he originated.

3.   Co-conspirators A.A., J.L., and P.C. worked as loan officers for SunTrust in the Falls Church, Virginia branch office. A.A. was employed by SunTrust from 2003 to 2006; J.L. was employed by SunTrust from 2002 to 2006; and P.C. was employed by SunTrust from 2003 to 2008.

1

4. Co-conspirators M.S. and Y.C. worked as loan officer assistants in the Falls Church, Virginia branch office of SunTrust at times relevant to the Indictment.

5. An "unqualified buyer" was an individual whose address, employment, monthly income, rental income, assets, citizenship, or intent to occupy the property as a primary residence was falsified in loan documents to qualify the individual for larger home mortgage loans or better interest rates than the individual could have otherwise obtained from SunTrust.

6. A "straw buyer" was an individual whose name and credit were fraudulently used to secure mortgage financing for another person.

7. The allegations in paragraphs 1 through 6 are realleged in each count of this Indictment as if set forth fully therein.

## COUNT 1
### (Conspiracy)

THE GRAND JURY FURTHER CHARGES THAT:

I. **The Conspiracy and Its Objects**

8. From in or about May 2005 through in or about December 2006, within the Eastern District of Virginia and elsewhere, the defendant JAVIER SIVERONI unlawfully and knowingly did combine, conspire, confederate, and agree with A.A., J.L, P.C., M.S., Y.C., and others known and unknown to the Grand Jury, to commit offenses against the United States, namely:

   a. **Wire Fraud**, to wit: To knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for purposes of executing such scheme and artifice, transmit and cause to be transmitted by means of wire communications in interstate commerce, any writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

II. **Purposes of the Conspiracy**

9. The primary purposes of the conspiracy were to defraud SunTrust into lending funds for the purchase of and the refinance of loans secured by residential properties, and to profit, in part, from commissions, bonuses, incentives, and salary.

III. **The Manner and Means of the Conspiracy**

Defendant SIVERONI and his co-conspirators employed various manners and means in furtherance of the conspiracy and scheme to defraud, including but not limited, to the following:

10. SIVERONI, M.S., Y.C., A.A., J.L., P.C., and others prepared and caused to be prepared false and fraudulent mortgage loan applications – often Uniform Residential Loan

Application ("URLA") forms – in the straw buyers' and unqualified buyers' names. The fraudulent mortgage loan applications contained false, fraudulent, and misleading information such as false information regarding the applicants' present address, employment, income, liabilities, assets, rental income, citizenship and immigration status, and intent to occupy the properties as primary residences.

11. SIVERONI taught A.A., M.S., Y.C., and others how to prepare false, fraudulent, and misleading loan applications and other documents in support of the loan application.

12. SIVERONI directed M.S. and Y.C. to prepare and he approved false, fraudulent, and misleading loan documents.

13. SIVERONI provided blank leases to A.A., P.C., and others in order to corroborate false, fraudulent, and misleading information contained in loan applications.

14. SIVERONI, A.A., P.C., J.L., and others prepared and caused to be prepared fake and altered leases, which SIVERONI, A.A., P.C., J.L., and others signed for each other and submitted to SunTrust.

15. SIVERONI, M.S., and others created and caused to be created false, fraudulent, and misleading Verification of Employment ("VOE") forms and Verification of Rent ("VOR") forms that corroborated false information included on loan applications.

16. SIVERONI, M.S., Y.C., and others created and caused to be created fake and false employment letters, Certified Public Accountant ("CPA") letters, tax preparer letters, Verification of Deposit ("VOD") forms, and Alternative Credit Reference ("Alternative Credit") letters that were submitted to SunTrust in support of false, fraudulent, and misleading loan applications.

17. In order to obtain mortgage loans for the straw buyers and unqualified buyers, SIVERONI and others submitted false, fraudulent, and misleading loan applications to SunTrust for underwriting and approval. The straw buyers and unqualified buyers used the mortgage loan proceeds to purchase properties and refinance existing loans.

18. SIVERONI and others profited from these fraudulent transactions in numerous ways, including through salary, commission, bonus, and incentives.

## IV. Overt Acts

In furtherance of the conspiracy and to effect its illegal objects, on or about the dates listed below, in the Eastern District of Virginia and elsewhere, defendant SIVERONI and his co-conspirators committed the following overt acts, among others:

### A. Property Located at 2117 South Nelson Street, Arlington, Virginia

19. In or around July 2005, SIVERONI placed a telephone call to real estate agent E.S. during which they discussed a mortgage loan application for V.S. During the call, SIVERONI directed E.S. to do whatever M.S. instructed.

20. In or around July 2005, M.S. told E.S. that V.S. would not qualify for the mortgage based on his income and that V.S. would need to provide an additional employer.

21. Following M.S.'s instructions, in or around July 2005, E.S. contacted E.N., who agreed to verify falsely that V.S. was employed by EJN General Construction.

22. On or about July 15, 2005, SIVERONI caused to be submitted to SunTrust URLAs for V.S. that contained materially false, fraudulent, and misleading information, including that V.S. earned a monthly income of $9,250, that he was employed as a superintendent at EJN General Construction, that he earned $2,450 in monthly rental income,

and that he intended to occupy the property as his primary residence. The URLAs also failed to list V.S.'s recent purchase of 8024 Urbana Road in Manassas, Virginia.

23. On or about July 15, 2005, using the fraudulent URLAs, V.S. purchased 2117 South Nelson Street for a purchase price of $500,000. SIVERONI was the loan officer and earned a commission on this transaction.

**B.  Property Located at 5207 Dalton Road, Springfield, Virginia**

24. In or around May 2005, M.S. told J.T. that, because of his credit, he would not qualify for a mortgage loan.

25. In or around May 2005, A.G. agreed to act as a straw buyer for J.T. for the purchase of 5207 Dalton Road, and A.G. and J.T. told M.S. about their agreement, including that A.G. did not intend to occupy the property as his primary residence.

26. In or around May 2005, M.S. informed SIVERONI of the agreement between A.G. and J.T. SIVERONI gave M.S. permission to prepare a fraudulent mortgage loan application in A.G.'s name.

27. On or about May 4, 2005, at M.S.'s direction, J.T. added A.G. to his Chevy Chase checking and money market accounts to make it appear that A.G. had additional bank assets in order to qualify for the loan.

28. On or about June 10, 2005, M.S. altered A.G.'s VOD, falsifying the date the Chevy Chase money market account was opened and its current and average balances.

29. On or about July 29, 2005, SIVERONI caused to be submitted to SunTrust URLAs for A.G. that contained materially false, fraudulent, and misleading information, including that A.G. earned a monthly income of $9,200, that he was earning $1,900 in monthly

rental income, that he intended to occupy the property as his primary residence, and that he had $34,746 in Chevy Chase bank accounts.

30. On or about July 29, 2005, using the fraudulent URLAs, A.G. purchased 5207 Dalton Road for a purchase price of $500,000, using two mortgage loans from SunTrust. SIVERONI was the loan officer and earned a commission on this transaction.

C. **Property Located at 108 Tattersall Court, Stephens City, Virginia**

31. In or around December 2005, SIVERONI inflated the monthly income listed in B.K.'s loan applications.

32. On or about December 19, 2005, SIVERONI caused to be submitted to SunTrust URLAs for B.K. that contained materially false, fraudulent, and misleading information, including that B.K. intended to occupy the property as his primary residence and his monthly income was $30,000.

33. On or about December 19, 2005, using the fraudulent URLAs, B.K. purchased the property at 108 Tattersall Court for a purchase price of $496,885. SIVERONI was the loan officer and earned a commission on this transaction.

D. **Property Located on 4333 Golden Gate Way, Dumfries, Virginia**

34. On or about December 8, 2005, SIVERONI directed Y.C. to obtain a false employment letter from Alfredo Trucking, Inc., stating that W.O. was employed by Alfredo Trucking as a subcontractor for more than two years.

35. On or about December 11, 2005, SIVERONI cause to be submitted to SunTrust URLAs that contained materially false, fraudulent, and misleading information, including that W.O. was self-employed for two years, that he earned $9,800 in monthly income, and that he received monthly rental income of $2,500.

36. On or about December 13, 2005, SIVERONI provided Y.C. with language to use in an altered tax preparer letter for W.O., which would indicate that a tax preparer had prepared W.O.'s tax returns for two years and that W.O. was self-employed during that period.

37. On or about December 13, 2005, Y.C., with the approval of SIVERONI, altered a tax preparer letter showing that a tax preparer had prepared W.O.'s tax returns for two years and that W.O. was self-employed for those years.

38. On or about December 21, 2005, using the fraudulent URLAs, W.O. purchased the property at 4333 Golden Gate Way, Dumfries, Virginia for a purchase price of $450,000. SIVERONI was the loan officer and earned a commission on this transaction.

E. **Property Located at 4335 Golden Gate Way, Dumfries, Virginia**

39. In or around December 2005, SIVERONI inflated the monthly income listed in B.K.'s loan applications.

40. On or about December 22, 2005, SIVERONI caused to be submitted to SunTrust URLAs for B.K. that contained materially false, fraudulent, and misleading information, including B.K.'s present address and that his monthly income was $30,000.

41. On or about December 22, 2005, using the fraudulent URLAs, B.K. purchased the property at 4335 Golden Gate Way for a purchase price of $450,000. SIVERONI was the loan officer and earned a commission on this transaction.

F. **Property Located at 4327 Golden Gate Way, Dumfries, Virginia**

42. On or about December 22, 2005, SIVERONI caused to be submitted to SunTrust URLAs for P.K. that contained materially false, fraudulent, and misleading information, including that P.K. intended to occupy the property as his primary residence and that he received $2,100 in monthly rental income.

43. On or about December 22, 2005, using the fraudulent URLAs, P.K. purchased the property at 4327 Golden Gate Way for a purchase price of $450,000. SIVERONI was the loan officer and earned a commission on this transaction.

G. **Property Located at 4331 Golden Gate Way, Dumfries, Virginia**

44. On or about December 8, 2005, SIVERONI instructed Y.C. to alter a tax preparer letter so that it falsely indicated O.C. was self-employed in 2003 and 2004.

45. On or about December 28, 2005, SIVERONI reviewed a URLA for O.C. and changed O.C.'s job title from carpenter to subcontractor.

46. On or about December 28, 2005, SIVERONI caused to be submitted to SunTrust URLAs for O.C. that contained materially false, fraudulent, and misleading information, including that O.C. was self-employed for two years and that he earned $9,500 in monthly income.

47. On or about December 28, 2005, using the fraudulent URLAs, O.C. purchased the property at 4331 Golden Gate Way, Dumfries, Virginia for a purchase price of $450,000. SIVERONI was the loan officer and earned a commission on this transaction.

H. **Property Located at 13536 Davinci Lane #52, Oak Hill, Virginia**

48. On or about January 16, 2006, SIVERONI caused to be submitted to SunTrust a false VOR, purportedly signed by R.K., indicating that A.K. paid $2,500 a month in rent to her landlord, R.K.; when, in truth, A.K. owned the property.

49. On or about January 31, 2006, SIVERONI caused to be submitted to SunTrust falsified URLAs that contained materially false, fraudulent, and misleading information, including that A.K. intended to occupy the property as her primary residence and that A.K. was a

renter at 18269 Saint Georges Court, Leesburg, Virginia. The URLAs failed to disclose A.K. owned 18269 Saint Georges Court.

50. On or about January 31, 2006, using the fraudulent URLAs, A.K. purchased the property at 13536 Davinci Lane #52, Oakhill, Virginia, for a purchase price of $453,550. SIVERONI was the loan officer and earned a commission on this transaction.

### I. Property Located at 813 Madison Court, Stafford, Virginia

51. Between in or about January and February 2006, after C.A. agreed to act as a straw buyer for L.D. for the purchase of 813 Madison Court, C.A. sent his personal and financial information to M.S.

52. Between in or about January and February 2006, after M.S. and realtor S.H. informed SIVERONI that C.A. was a straw buyer, SIVERONI authorized M.S. to process C.A.'s loan application.

53. On or about February 16, 2006, SIVERONI caused to be submitted to SunTrust URLAs for C.A. that contained materially false, fraudulent, and misleading information, including that C.A.'s monthly income was $5,400, that he earned $900 in monthly rental income, that he was a U.S. citizen, and that he had $10,856 in a Wachovia bank account.

54. On or about February 16, 2006, using the fraudulent URLAs, C.A. purchased the property at 813 Madison Court for a purchase price of $195,000. SIVERONI was the loan officer and earned a commission on this transaction.

### J. Property Located at 4006 Parkwood Street, Brentwood, Maryland

55. On or about March 30, 2006, SIVERONI knowingly caused RGS Title in Rockville, Maryland to fax wiring instructions to SunTrust in Falls Church, Virginia.

56.     On or about March 25, 2006, SIVERONI wrote a fake tax preparer letter that falsely stated that a tax preparer had prepared M.A.'s tax returns for the 2004 tax year and that M.A. was self-employed for two years.

57.     On or about March 25, 2006, at SIVERONI's direction, M.S. affixed letterhead and a signature from a validly obtained tax preparer letter for M.A. to the fake tax preparer letter SIVERONI drafted.

58.     On or about April 3, 2006, SIVERONI caused to be submitted to SunTrust URLAs for M.A. that contained materially false, fraudulent, and misleading information, including that M.A. was a U.S. citizen, that her monthly income was $6,800, and that she was the owner of Alverto Service Cleaner.

59.     On or about April 3, 2006, using the fraudulent URLAs, M.A. purchased the property at 4006 Parkwood Street for a purchase price of $270,000. SIVERONI was the loan officer and earned a commission on this transaction.

**K.     Property Located at 100 Hidden Oaks Ct. #2, Pawleys Island, South Carolina**

60.     In or around July 2006, M.S. told SIVERONI that H.V. would find a friend to verify fake employment for E.V.

61.     On or about July 11, 2006, SIVERONI caused to be submitted to SunTrust URLAs for E.V. that contained materially false, fraudulent, and misleading information, including that E.V. was employed as a settlement officer at The Americas Title Group, LLC and that he was a U.S. citizen.

62.     On or about July 17, 2006, SIVERONI knowingly caused Pawleys Insurance Agency in Pawleys Island, South Carolina to fax a proof of insurance letter to SunTrust in Falls Church, Virginia.

63. On or about July 25, 2006, using the fraudulent URLAs, E.V. purchased the property at 100 Hidden Oaks Ct. #2 for a purchase price of $240,522. SIVERONI was the loan officer and earned a commission on this transaction.

### L. Property Located at 7712 Bristow Drive, Annandale, Virginia

64. In or around July 2006, M.S. told SIVERONI that F.E. was a straw buyer for L.M.'s purchase of 7712 Bristow Drive and that F.E. would not live in the property.

65. On or about July 28, 2006, SIVERONI caused to be submitted to SunTrust URLAs for F.E. that contained materially false, fraudulent, and misleading information, including that F.E. intended to occupy the property as his primary residence, that F.E. earned $18,000 in monthly income, and that he earned in $2,750 in monthly rental income.

66. On or about July 28, 2006, using the fraudulent URLAs, F.E. purchased the property at 7712 Bristow Drive for a purchase price of $500,000. SIVERONI was the loan officer and earned a commission on this transaction.

### M. Property Located at 15192 Cloverdale Road, Woodbridge, Virginia

67. In or around November 2006, Y.C. told SIVERONI that J.G. was an illegal alien who wanted to refinance his mortgage loan.

68. On or about November 30, 2006, SIVERONI caused to be submitted to SunTrust URLA for J.G. that contained materially false, fraudulent, and misleading information, including that J.G. was a U.S. citizen and that his social security was XXX-XX-9870.

69. On or about November 30, 2006, using the fraudulent URLA, J.G. refinanced his mortgage loan in the amount of $200,000 for the property at 15192 Cloverdale Road. SIVERONI was the loan officer and earned a commission on this transaction.

## COUNTS 2 - 5
## (Wire Fraud)

THE GRAND JURY FURTHERS CHARGES THAT:

70. From in or about March 2005 through in or about December 2006, within the Eastern District of Virginia and elsewhere, defendant SIVERONI, having knowingly devised a scheme and artifice to defraud SunTrust, and to obtain money and property from SunTrust, by means of materially false and fraudulent pretenses and representations, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, for the purpose of executing such scheme and artifice to defraud.

**I.     The Scheme and Artifice to Defraud**

71. The scheme and artifice to defraud is more fully described in paragraphs 10 through 69 of Count 1 of this Indictment, which are realleged and incorporated in Counts 2 through 5 as if fully set forth. It was further a part of the scheme and artifice to defraud that:

**A.     Property Located at 244 Reubins Circle, Martinsburg, West Virginia**

72. On or about April 21, 2006, SIVERONI knowingly caused Allstate Insurance Company in Martinsburg, West Virginia to fax wiring instructions to SunTrust in Falls Church, Virginia.

73. On or about April 25, 2006, SIVERONI caused to be submitted to SunTrust URLAs for G.G. that contained materially false, fraudulent, and misleading information, including that G.G. earned $15,500 in monthly income.

74. On or about April 25, 2006, using the fraudulent URLAs, G.G. purchased the property at 244 Reubins Circle for a purchase price of $379,062. SIVERONI was the loan officer and earned a commission on this transaction.

### B. Property Located at 6354 Columbia Pike, Falls Church, Virginia

75. In or around December 2006, SIVERONI conducted an in-person interview of S.M., during which SIVERONI obtained accurate information regarding S.M.'s finances.

76. On or about December 8, 2006, SIVERONI knowingly caused Republic Title in Annandale, Virginia to fax a loan payoff request letter to Bank of America in North Carolina.

77. On or about December 27, 2006, SIVERONI prepared and caused to be prepared a URLA for S.M. that contained materially false, fraudulent, and misleading information, including that S.M. worked in the construction industry for 20 years, that S.M. earned $17,500 in monthly income, and that S.M. earned $13,500 in monthly rental income.

78. On or about December 27, 2006, using the fraudulent URLA prepared by SIVERONI, S.M. refinanced her mortgage loan in the amount of $450,000 for the property at 6354 Columbia Pike. SIVERONI was the loan officer and earned a commission on this transaction.

## II. Interstate Wire Communications

79. On or about the respective dates listed below in Counts 2 through 5, within the Eastern District of Virginia and elsewhere, SIVERONI, for the purpose of executing the scheme and artifice described above, knowingly transmitted and caused to be transmitted by wire communications in interstate commerce certain writings, signs, signals, and sounds as described below:

| Count | Date | State of Origin | State of Receipt | Description / Property |
|---|---|---|---|---|
| 2 | March 30, 2006 | Maryland | Virginia | RGS Title faxes wiring instructions to SunTrust<br><br>Property: 4006 Parkwood Street |
| 3 | April 21, 2006 | West Virginia | Virginia | Allstate Insurance Company faxes evidence of insurance letter to SunTrust<br><br>Property: 244 Reubins Circle |
| 4 | July 17, 2006 | South Carolina | Virginia | Pawleys Insurance Agency faxes proof of insurance letter to SunTrust<br><br>Property: 100 Hidden Oaks Ct. #2 |
| 5 | December 8, 2006 | Virginia | North Carolina | Republic Title faxes a loan payoff request letter to Bank of America<br><br>Property: 6354 Columbia Pike |

(In violation of Title 18, United States Code, Sections 1343 and 2).

## Forfeiture Notice

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, Defendant Javier Siveroni is notified that upon conviction of any of the offenses charged in Counts 1 through 5 herein, he shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the violations charged herein and any property involved in such offenses and traceable to such offenses. Property subject to forfeiture includes but is not limited to:

**Real property and improvements known as 210 Longview Drive, Alexandria, VA 22314** and

**Real property and improvements known as 6904 Gillings Road, Springfield, VA 22152.**

(In accordance with 18 U.S.C. §981(a)(1)(C), 18 U.S.C. §982(a) and 28 U.S.C. §2461(c).)

A TRUE BILL

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____
Foreperson

Neil H. MacBride
United States Attorney

By: _____
Uzo Asonye
Assistant United States Attorney