IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:11-CR-155 |
| v. ) | |
| ) | The Honorable Liam O'Grady |
| JAVIER SIVERONI, ) | |
| ) | Sentencing Date: November 4, 2011 |
| Defendant. ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Neil H. MacBride, United States Attorney, and Uzo E. Asonye, Assistant United States Attorney, in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual ("Guidelines" or "U.S.S.G.") § 6A1.2, files this Position of the United States With Respect to Sentencing of defendant Javier I. Siveroni ("Siveroni" or "defendant").

The United States submits that defendant Siveroni should have received a two-point enhancement for Aggravating Role, pursuant to §3B1.1(c) of the Sentencing Guidelines ("Guidelines"), which was for good reason agreed to by the parties in the plea agreement. When this enhancement is added to Siveroni's offense level, the recalculated Guidelines level is 28 – after an acceptance of responsibility reduction – which results in a 78 - 97 months Guidelines range. The United States respectfully submits that the Sentencing Guidelines appropriately account for each of the factors set forth in 18 U.S.C. § 3553(a) in this case and requests that this Court impose a sentence of imprisonment of 80 months. The government also requests that this Court order full restitution of $2,631,402.22 and impose a period of supervised release.

*Background*

On March 25, 2011, Defendant Siveroni pleaded guilty to a criminal information charging him with one count of Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349. Siveroni pleaded guilty for his role as a loan officer in a wide ranging mortgage fraud conspiracy in Northern Virginia based out of the Falls Church branch of SunTrust Mortgage. As a senior loan officer, Siveroni directly facilitated at least 15 fraudulent mortgage loan applications that resulted in unqualified buyers obtaining over $6.5 million in mortgage loan proceeds and victim financial institutions suffering losses of $2.6 million. *See* Statement of Facts ¶ 12.

*Argument*

As this Court is aware, following the Supreme Court's decision in *United States v. Booker*, the Sentencing Guidelines are now advisory. 543 U.S. 220, 261 (2005). As such, "[i]n the wake of *Booker* . . . the discretion of the sentencing court is no longer bound by the range prescribed by the guidelines." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (quoting *Booker*, 542 U.S. at 264). The Supreme Court recently clarified that this means that the sentencing court "may not presume that the Guidelines range is reasonable." *Nelson v. United States*, --- US ----, 129 S.Ct. 890, 892 (2009). Nevertheless, "the sentencing court must first calculate the Guidelines range." *Id.* at 891; *see also Hughes*, 401 F.3d at 546 (holding that a sentencing court is still required to 'consult [the] Guidelines and take them into account when sentencing.'"). Thus, "sentencing courts are not left with unguided and unbounded sentencing discretion." *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006).

I.     THE GUIDELINES RANGE SHOULD BE RECALCULATE TO BE 78-97 MONTHS

    A.     Aggravated Role Enhancement

The United States respectfully disagrees with the Probation Officer's determination that defendant Siveroni not receive a two-point enhancement for aggravating role, pursuant to U.S.S.G. §3B1.1(c), despite agreement by the parties that the enhancement is applicable. *See* **PSR** at ¶39. U.S.S.G. §3B1.1(c) requires application of a two level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity". Here, there is no question that the defendant managed or supervised the criminal conduct of his loan assistants, Maria Teresa Sanchez ("Sanchez" or "M.S.") and Yolanda Camacho ("Camacho" or "Y.S.").

During the government's investigation, law enforcement learned a number of facts that confirmed Siveroni's role as a manager and supervisor over Sanchez and Camacho, two convicted members of the conspiracy. First, as a loan officer Siveroni had supervisory authority and managerial control over Sanchez and Camacho. In 2003, Siveroni hired Sanchez as a loan assistant, and he and another loan officer, Alejandro Alquinta ("Alquinta") together hired Camacho. The defendant determined compensation for Sanchez and Camacho and he paid their salaries when they worked for him. Sanchez and Camacho reported directly to Siveroni, who supervised all of their work while they worked for him. In fact, Siveroni received compensation for every loan that Sanchez and Camacho processed. *See* **PSR** ¶11. During the period that Sanchez was employed at SunTrust, which was over seven years, she worked for only one loan officer — Javier Siveroni.[1]

In addition to supervising his loan assistants' daily work, Siveroni taught them how and instructed them to falsify information in loan documents. Siveroni admitted as much in his Statement of Facts. For instance, paragraph 21 of the **PSR**, which incorporates the Statement of

3

Facts, states: "SIVERONI showed M.S. and Y.C. how to prepare false, fraudulent, and misleading loan applications and other documents in support of the loan application." Furthermore, Siveroni "directed M.S. and Y.C. to prepare, and SIVERONI approved false, fraudulent, and misleading loan documents." **PSR** at ¶22.

Nor were Siveroni's instructions to his assistants to engage in fraudulent criminal activity isolated or general. Siveroni gave Sanchez and Camacho specific orders and authorization to process fraudulent loan documents for, at least, the following nine property transactions: 2117 South Nelson Street, Arlington, Virginia; 5207 Dalton Road, Springfield, Virginia; 4333 Golden Gate Way, Dumfries, Virginia; 4331 Golden Gate Way, Dumfries, Virginia; 813 Madison Court, Stafford, Virginia; 4006 Parkwood Street, Brentwood, Maryland; 100 Hidden Oaks Ct. #2, Pawleys Island, South Carolina; 7712 Bristow Drive, Annandale, Virginia; and 15192 Cloverdale Road, Woodbridge, Virginia *See* Indictment ¶¶ 19, 26, 34 , 44, 52, 57, 60, 64, 67. Siveroni's instructions included directing Sanchez and Camacho to create fake employment letters, Certified Public Accountant letters, tax preparer letters, Verification of Deposit forms, and Alternative Credit Reference letters that were submitted to SunTrust in support of fraudulent loan applications. *See* **PSR** ¶26.

Moreover, Camacho and Sanchez both corroborated Siveroni's own admissions about his supervisory and instructional relationship. According to information Ms. Camacho provided to the Probation Office, "she continued to trust and assist the officers with falsifying documents as requested of her." *See* **Camacho PSR** ¶53. As noted above, Ms. Camacho worked mostly for the defendant. Indeed, Camacho agreed that "J.S. directed CAMACHO to claim on the loan application that O.C. was self-employed for two years even though CAMACHO and J.S. knew

---

1 Camacho initially worked loan officer Alquinta for a few months before reporting to Siveroni exclusively.

that information was false." *See* Camacho Statement of Facts ¶12. Likewise, Sanchez, who worked exclusively for Siveroni, confirmed the same information. In a signed confession about fraudulent loan applications, Sanchez wrote, "I never did this without asking permission of my boss Javier Siveroni. He had to give his approval before I could do this on a loan application." She also wrote, "I always asked Javier Siveroni's permission before I completed a loan application in the name of a family member other than the individual who would be living in the house and making mortgage payments." Sanchez reiterated in subsequent debriefings with law enforcement that she engaged in criminal conduct at Siveroni's behest.

In light of the facts above, it is quite clear that Siveroni was a manager or supervisor of Sanchez and Camacho's criminal activity. Application Note 4 to Subsection 3B1.1 of the Guidelines indicates that in applying a manager or supervisor enhancement the Court should consider, among other factors, "the nature of the participation in the offense" and "the degree of control and authority exercised over others." Here, Siveroni directed and controlled much of his subordinate loan assistants' fraudulent activity. *Cf. U.S. v. Bonsu*, 2008 WL 3863358 at *7 (4th Cir. 2008) ("examples of control include instructing couriers, making travel arrangements or otherwise directing another person's activities"). Moreover, the defendant taught his subordinate the mechanics of the mortgage fraud scheme. *U.S. v. McDaniel*, 398 F.3d 540, 552 (6th Cir. 2005) (upholding a manager or supervisor enhancement based on a district court finding that defendant taught a co-conspirator the mechanics of the check fraud scheme). These facts indicate that, contrary to the Probation Office's determination, the manager or supervisor enhancement is appropriate in this case as agreed by the parties.

It is also important to note that Probation Officer William Buyerle recommended – and the Court applied – a two level enhancement for aggravating role for loan officer Alquinta a co-conspirator, in *United States v. Alquinta*, 1:10CR425. Probation Officer Buyerle concluded:

> In this matter, the defendant managed and supervised J.C. whom he hired as his loan officer assistant. Alquinta paid J.C.'s salary and oversaw J.C.'s work at all times. Alquinta trained J.C. relative to the mortgage industry and directed J.C. to falsify loan applications in order to support and further the instant offense. The defendant had ultimate authority over the loan applications processed by J.C. and enjoyed a proportionally greater benefit from the falsifications. As such, the offense level has been increased two levels, pursuant to §3B1.1(c), to account for the defendant's aggravating role. **Alquinta PSR** ¶41.

Since the aggravating role enhancement applied to Alquinta, a loan officer who managed only once loan assistant, it is certainly appropriate here, where the defendant supervised the fraudulent activities of two loan assistants.

The Probation Officer reasoned that Siveroni should not receive the enhancement because "neither coconspirator Preston Cherouny nor John Leone, who were also loan officers, received an enhancement for manager or supervisor," which would result in a disparity in sentencing. **Addendum to PSR** at A-1. But, the facts are quite the opposite. Preston Cherouny ("Cherouny") and John Leone ("Leone") did not receive – and the government did not seek – the manager enhancement because they never employed loan assistants who they recruited into the conspiracy. Alquinta received the enhancement because he did. Accordingly, to hold otherwise and not apply the enhancement in defendant Siveroni's case, would result, at minimum, in an unwarranted disparity in the application of the Guidelines between Siveroni and Alquinta.

In sum, for the reasons explained above, the government believes that the Court impose a two level enhancement in the offense level for aggravating role due to Siveroni's management and supervision of the criminal activities of his two convicted loan assistants.

B.   *Obstruction of Justice Enhancement*

The defendant objects to the Probation Officer's assessment that Siveroni receive an enhancement, pursuant to §3C1.1, for obstruction of justice. Contrary to defendant's contention that he simply maintained his innocence in conversations with friend co-conspirators, his statements went much further. **Addendum to PSR** at A-1. As described more fully below, they were attempts to obstruct the government's investigation by influencing his co-conspirators statements to law enforcement. In fact, the evidence shows that the defendant attempted to obstruct and impede justice through his instructions to co-conspirators to lie to FBI agents investigating this conspiracy.

U.S.S.G. §3C1.1 requires application of a two level enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense". Moreover, the Fourth Circuit has approved obstruction of justice enhancements for a wide variety of conduct, including making false statements to an agent regarding a co-conspirator's role in the offense. *See United States v. Kiulin*, 360 F.3d 456, 461 (4th Cir. 2004); *see also United States v. Harper*, 2011 WL 3585065, at \*3 (4th Cir. 2011) (upholding obstruction enhancement after defendant requested that inmates write false letters in an attempt to reduce defendant's sentence); *United States v. Royal*, 2011 WL 3489662, at \*5 (4th Cir. 20111) (upholding obstruction enhancement when defendant prompted witness to "lie about her age" to law enforcement and witness followed instructions when initially questioned); *United States. v. Haskins*, 166 Fed.Appx. 76, 78 (4th Cir. 2006) (upholding obstruction enhancement based upon defendant's instructing a witness to give false

testimony about where he resided and how much time he spent at an apartment); *United States v. Ashers*, 968 F.2d 411, 412 (4th Cir. 1992) (citing with approval obstruction enhancement upheld by 8th Circuit for requesting a co-defendant to withhold information from law enforcement officials).

In this case, the enhancement is applicable due to the defendant's attempts to unlawfully influence two co-conspirators' statements to FBI agents investigating the conspiracy. Cherouny was involved in this mortgage fraud conspiracy and ultimately pleaded guilty to conspiracy to commit wire fraud. The day before Cherouny was scheduled to meet with FBI agents to discuss his role in the conspiracy, Cherouny contacted Siveroni, asking why the FBI had contacted him. *See* Cherouny, FBI 302 (May 16, 2011). Siveroni told Cherouny that the FBI would ask him questions about his loan files. Despite knowing that the two had processed fraudulent loan applications, Siveroni told Cherouny to "not admit anything." *Id.* But, Siveroni went even further. He then told Cherouny to "deny knowledge of anything he was asked." *Id.* The FBI report concludes, "Cherouny understood this to mean that he should *not tell the truth* to the FBI." *Id.* (emphasis added).

On a different occasion, Siveroni attempted to unlawfully influence John Leone ("Leone"), another co-conspirator who ultimately pleaded guilty. According to a separate FBI 302, Siveroni called Leone shortly after the FBI had interviewed Siveroni. *See* Leone, FBI 302 (Jan. 7, 2011). Siveroni told Leone that he "had an answer or justification for everything the FBI asked him." *Id.* Then, Siveroni told Leone that "they should deny everything." *Id.*

Both of these incidents were clear attempts by the defendant to improperly influence two witnesses to lie to government investigators. Siveroni attempted to impede the government's investigation into the scope and nature of the conspiracy. These issues were material to the

investigation and related not only to Siveroni's own conduct but that of his co-conspirators.

And there is no question that Siveroni's succeeded in obstructing the government's investigation for some time. When FBI agents confronted Cherouny in December 2010, Cherouny did just as Siveroni instructed. He lied. Cherouny told investigators that he had never heard of a straw-buyer transaction; never witnessed fraud at SunTrust; had no knowledge of a fraudulent loan for P.G.; and Siveroni never asked him to sign fake documents. *See* Cherouny, FBI 302 (Dec. 16, 2010). In short, just like Siveroni, he denied everything. One year later, Cherouny, admitting his role in the conspiracy, recanted each and every one of the lies stated above. In light of these facts, Siveroni's conduct falls squarely within a plain reading of U.S.S.G. §3C1.1.

With respect to the Guidelines calculation, the government's position is that defendant Siveroni should receive two level enhancements for aggravating role and obstruction of justice. These enhancements are supported by both law and fact. The aggravating role enhancement, in particular, was agreed by the parties. These aggravated role adjustment result in an adjusted offense level of 28 and a Guidelines Range of 78 – 97 months.

II. **A SENTENCE OF 80 MONTHS INCARCERATION SERVES THE FACTORS SET FORTH IN 3553(A)**

After calculating the appropriate guidelines range, "the court must 'determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006) (quoting *Green*, 436 F.3d at 455). It is the Government's position that in this case the Sentencing Guidelines establish a reasonable, initial sentencing range that

appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a). Therefore, a variance is not appropriate in this case.

Section 3553(a) directs the sentencing court to consider various factors including the nature and circumstances of the offense and characteristics of the defendant. In addition, Section 3553(a) states that the court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B).

In general, a sentencing court must "articulate the reasons for selecting the particular sentence, especially explaining why a sentence outside of the Sentencing Guidelines range betters serves the relevant sentencing purposes set forth in § 3553(a)." *Green*, 436 F.3d at 456; *see also Hughes*, 401 F.3d at 546 ("If the court imposes a sentence outside the guidelines range, it should explain its reason for doing so.").

### A. The Guidelines Range Is An Appropriate and Reasonable Starting Point in Light of the Nature of Defendant's Criminal Conduct

In formulating a sentence, this Court must take into account the nature and circumstances of the offense and the defendant's characteristics. 18 U.S.C. § 3553(a)(1). Applying these sentencing factors to the facts of this case demonstrates that a variance or downward departure is unwarranted and the guidelines' range of 78-97 is appropriate. Defendant Siveroni engaged in a serious and lengthy crime. The defendant's conduct did not represent a momentary lapse of judgment or even a narrowly focused fraud. His fraud was widespread, lasted multiple months, and affected numerous borrowers and communities.

The damage the defendant wrought is significant. The defendant participated directly in fraudulent mortgage transactions resulting in mortgage loan proceeds to unqualified buyers of over $6.5 million and losses in excess of $2.6 million. Multiple properties in the Northern Virginia area were foreclosed as a result of the defendant's actions. All of those factors must be taken into account in fashioning an appropriate sentence.

Section 3553(a)(2)(A) also requires the sentence to "promote respect for the law." The defendant, through his offense conduct, has shown a complete disrespect for the law. The defendant — by approving and submitting fraudulent loan documents— played a critical role in carrying out the conspiracy's fraudulent purposes. Without him the fraud could not have succeeded. In short, the defendant took proactive and affirmative steps to help the conspiracy succeed. This serious conduct calls for a sentence that includes a significant period of incarceration.

### B. A Starting Sentence Within The Guidelines' Range Would Provide An Appropriate And Reasonable Deterrent Factor.

In addition, a starting sentence within the Guidelines' range is appropriate to provide the requisite deterrent factor. *See* 18 U.S.C. § 3553(a)(2)(B). The United States believes that the criminal conduct for which Siveroni is now being sentenced is deterrable and that a starting sentence within the Guidelines range is necessary and appropriate to afford adequate deterrence.

Mortgage fraud prosecutions require the Government to commit significant investigative and prosecutorial resources. As a result of the significant resources required to mount a mortgage fraud prosecution, general deterrence becomes a more important sentencing factor. In this case, it is important to note that government investigators approached the defendant early on in the investigation and requested his cooperation, which he refused. Daring investigators and

prosecutors, Siveroni waited for two years to be indicted while he knew that other co-conspirators were cooperating with the government even after he was advised that he was a target of the investigation and should retain legal counsel. Consequently, the government spent two years investigating and building a case against the defendant.

Moreover, the mortgage loan process relies heavily on the integrity of the loan officer assistant. In this case, the loan officer assistant's complicity in the fraud was critical to the success of the underlying conspiracy. And there is no question that the conspiracy did succeed; it resulted in fraudulent loans involving multiple properties across Northern Virginia for unqualified buyers. In addition to specific deterrence, it is important that any sentence given to the defendant serve as a deterrent to others who would work with a loan officer assistant in an effort of further mortgage fraud. The message must be that those who defraud banks and mortgage lenders for their own personal gain will be punished appropriately, and that when they do that over an extended period of time and cause hundreds of thousands of dollars in loss, the punishment will be serious. A substantial period of incarceration is necessary to send the appropriate deterrent message.

**C. Avoiding Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct.**

The United States believes that a sentence of 80 months would account for the seriousness of the defendant's crime. In addition, an 80 month sentence within the Guidelines range will help to avoid unwarranted disparities between similarly situated defendants. In this case, as illustrated by the chart below, Siveroni is not a similarly situated defendant because his loss amount is dramatically higher than any other defendant that has been sentenced, and he facilitated the most fraudulent property transactions. Moreover, unlike other loan officers, he did

not cooperate with the investigation. Finally, his obstructive conduct separates him from other defendants. Thus, an 80 month sentence would not create an unwarranted disparity and is consistent with the Government's request that each defendant in this conspiracy receive a guidelines sentence.

| Defendant | Position | Fraudulent Transactions | Loss | Guidelines Range | Substantial Assistance | Final Sentence |
|---|---|---|---|---|---|---|
| Sanchez | Loan Assistant | 6 | $956,067 | 27-33 | 50% | 75 days jail; cooperate with deportation |
| Camacho | Loan Assistant | 3 | $426,650 | 27-33 | 40% | 90 days jail; 6 months home confinement |
| Alquinta | Loan Officer | 14 | $604,155 | 33-41 | 50% | 12 months and 1 day |
| Leone | Loan Officer | 4 | $34,800 | 8-14 | NA | 60 days jail; 4 months home confinement |
| Cherouny | Loan Officer | 1 | $99,536 | 15-21 | NA | 60 days jail; 4 months home confinement |
| *Siveroni* | *Loan Officer* | *15* | *$2.63 million* | *Not Yet Sentenced* | *Not Yet Sentenced* | *Not Yet Sentenced* |

*Conclusion*

For the reasons stated above, the United States respectfully requests: (i) that this Court find that the Sentencing Guidelines offense level be recalculates at level 28; (ii) that a sentence of 80 months be imposed because it reasonably accounts for each of the factors set forth in 18 U.S.C. § 3553(a); and (iii) that this Court order full restitution of $2,631,402.22 and impose a period of supervised release.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:         /s/
Uzo E. Asonye
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax:   (703) 299-3980

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of October 2011, I filed electronically the foregoing Position of the United States with Respect to Sentencing using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Alan H. Yamamoto, Esquire
643 South Washington Street
Alexandria, Virginia 22314
703/684-4700

Yamamoto.law@verizon.net
J. Frederick Sinclair, Esquire
100 North Pitt Street, Suite 200
Alexandria, Virginia 22314
703/299-0600
jfredsinclair@yahoo.com

                                                          /s/
                                        Uzo E. Asonye
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        2100 Jamieson Avenue
                                        Alexandria, VA 22314
                                        Phone: (703) 299-3700
                                        Fax:   (703) 299-3980